## B. G. WHITE and JOHN F. HOWLAND *v.* ABNER SUMMERS *et als.*

1. SURETY. *Not discharged by agreement for delay. When.* Where the principal in a note, after maturity, contracts with his creditor for delay, without knowledge to the sureties, by paying a part of the indebtedness as a credit.

  *Held,* The contract is without consideration, and will not bind the creditor, or discharge the sureties. L. C. In Eq., p. 564; also vol. 3, 561, *et seq.,* and 564; 5 Hum., 320.

2. ARGUENDO. *Same. What will discharge sureties.* If a creditor, without the assent of the sureties, enter into a valid contract for delay in the collection and enforcement of his debt, or adopt any other course, which operates as a suspension of the right to enforce it, the sureties will thereby be discharged. If the agreement be invalid for any other cause, it will not have this effect.

  L. C. In Eq., vol. 3; notes to Rees *v.* Benington, top p. 559, and authorities there cited; Washington *v.* Tait, Adm'r, 3 Hum., 543; Wilson *et als. v.* Langford, Adm'r, 5 Hum., 320.

---

### FROM RUTHERFORD.

---

Appeal from the Chancery Court. JAS. P. STEELE, Chancellor.

E. COOPER and B. L. LILLARD for White and Howland.

EWING for Blackman.

JNO. W. BURTON for Howland.

FREEMAN, J., delivered the opinion of the Court.

In this case the question is, whether there was such a contract for delay between Summers, the creditor, and Thos. D. White and Archibald Fulks, the princi-

pal debtors, as discharged the sureties, B. G. White and Jno. F. Howland.

A contract is charged in substance as follows: That in 1860, after the note on which the complainants were sureties, fell due, Summers agreed, for the consideration of one hundred dollars paid to him, to delay enforcement of the note for one year, and this without the consent of the sureties.

White and Fulks, the principals, are introduced to prove the contract alleged. The first proves that early in 1861, Fulks and himself made an arrangement with Summers to wait with them twelve months longer, the note having fallen due on December 25, 1860, they paying him forty dollars to do so. He says in his examination in chief that the money was paid, but on cross-examination he shows that he paid his share, twenty dollars, and Fulks told Summers he would pay the other twenty dollars in a few days, but whether it was ever actually paid this witness evidently did not know, and fails to prove. He proves further that Summers said the note was good, and he would not need the money, except to buy his groceries and pay his taxes, which would take about forty dollars, as the reason for the supposed arrangement.

The other witness, Fulks, proves that Summers agreed to wait with White and himself twelve months, by their paying him twenty dollars each.

The principle is settled beyond all question, that if a creditor, without the assent of the sureties, enter

into a valid contract for delay in the collection or enforcement of his debt, or adopt any other course which operates as a suspension of the right to enforce it, the sureties will be thereby discharged. See White and Tud., L.. C. In Eq., vol. 3, notes to *Rees* v. *Bennington,* top p. 559, and authorities cited. *Washington* ·v. *Tait,* administrator, 3 Hum., 543; *Wilson et als.* v. *Langford,* administrator, 5 Hum., 320. Perhaps the true test as to whether such an agreement shall be effective to discharge the surety is, whether or not the creditor has precluded himself from proceeding at once to collect his debt, or the debtor could interpose the agreement as a defence to such action, or hold the creditor responsible for violation of it. See L. C. In Eq., vol. 3, 561 *et seq.* It is, on this principle, settled, that if the agreement be illegal or invalid, for any other cause, it will not have this effect, as in case of an agreement to pay usury. L. C. In Eq., vol. 3, 574, 5 Hum., 320.

We think the rule laid down, also, in L. C. In Eq., p. 564, that no consideration can grow out of a payment, or promise to pay part of the debt already due, to support such a contract, and make it binding, so as to discharge the sureties, is based on sound principle. The promise of the party, or payment, is only part performance of his previous existent obligation. He does nothing more than he was already bound to do, and the party receiving the money, or promise, receives nothing in addition to what he was already entitled to receive under his contract. Such

an agreement would interpose no obstacle, in law, to the enforcement of the original contract.

Taking these principles as the basis of our reasoning, the conclusion follows, we think, from a fair construction of the testimony, that the creditor, Summers, was simply willing to indulge his debtors, and delay the enforcement of his claim, on receiving so much money as payment on it as would suit his necessities during the year, that is, forty dollars, but that this was not a binding contract, which could have been interposed by them as a defence to any action he might have brought on the note. It is too well settled to need discussion, that mere delay, without legal obligation binding to such delay, will not operate to release the sureties.

We, therefore, think the Chancellor. was correct in dismissing the injunction bill. The same is affirmed, with costs.